# CHARLESTON.

## TOWNER *v.* TOWNER.

Submitted June 8, 1908. Decided April 20, 1909.

1. CANCELLATION OF INSTRUMENTS—*Bill—Sufficiency—Mental Incapacity.*

   A bill to set aside and cancel a deed of trust on the ground of mental incapacity in the grantor to execute it, charging, with reasonable certainty as to time and relation to the event, committal of the plaintiff to an asylum for the insane, and not admitting or in any way disclosing a discharge therefrom, or a

lucid interval, is sufficient as to the allegation of mental incompetency. (p. 479.)

2. SAME—*Bill—Sufficiency.*

It is not essential to the sufficiency of such a bill that it allege fraud or undue influence in procurement of the execution of the deed. (p. 479.)

3. EQUITY—*Bill—Multifariousness.*

Such a bill is not rendered multifarious by the incorporation therein, by way of inducement, argument or aggravation, of foreign and immaterial matter which, set up in a bill for a different purpose, would afford ground for relief, wholly different in character from that sought. (p. 479.)

4. APPEAL AND ERROR—*Harmless Error—Informality in Proceedings.*

An answer, filed at rules, is a part of the record of the cause, and presumed to be a part of the foundation of the final decree, though not mentioned in any order in the cause, if process has been executed and sufficient time to regularly mature the cause has elapsed, and nothing to the contrary appears in the record. (p. 480.)

5. SAME.

A decree will not be reversed at the instance of a party who has taken depositions, for an informality in the proceedings, when it appears that there was a full and fair hearing upon the merits, and substantial justice has been done. (p. 480.)

6. SAME—*Want of Replication.*

If the defendant has taken depositions as if a replication to his answer had been filed, a decree against him will not be reversed for want of a replication. (p. 480.)

7. DEEDS—*Mental Capacity—Presumptions and Burden of Proof.*

Mental incompetency is presumed in respect to a deed executed by a person, after he has been adjudged insane and before his discharge from the hospital in which he was confined, although, at the time of its execution, he was at home, under a permission or furlough, given by the hospital authorities, and the burden of proof is on the grantee to prove it was executed in a lucid interval. (p. 480.)

8. SAME—*Mental Capacity—Lucid Interval.*

To sustain a deed, as having been executed in a lucid interval, the proof must be clear, going to the mental state and habit of the grantor, not merely to an accidental interview, or the degree of self-possession in a particular act. It must show the power and restriction of mind, deemed necessary, in general to the disposition and management of affairs. (p. 480.)

9. COSTS—*On Appeal—Party Inducing Error.* ·

An appellant who, in the court below, induced an error, consisting of failure to insert a saving clause, by introducing in his answer a matter foreign to the bill, and failing to ask for a reservation of his rights, respecting the same, may have the error corrected in the appellate court, but will not be allowed costs for such error alone. (p. 484.)

Appeal from Circuit Court, Doddridge County.

Bill by John Towner against Maggie Towner and another. Decree for complainant, and Maggie Towner appeals.

*Modified and Affirmed.*

G. W. FARR, A. F. McCUE and L. W. CHAPMAN, for appellant.

JAS. A. WATSON, FREER & ROBINSON, and J. W. STUCK, for appellee.

POFFENBARGER, JUDGE:

On the 11th day of January, 1905, John Towner entered into a contract, by which he agreed to pay his wife, Maggie Towner, $1,000.00, without interest, in installments of $100.00 each, the first of which was to become due on the 15th day of December, 1905, and the others on the 15th days of each succeeding December, until all should be paid. The agreement further provided for a separation of the parties. On the 14th day of January, 1905, Towner executed a deed of trust on his farm containing 79 acres and 40 poles, to secure the payment of said sum, and made L. W. Chapman trustee therein. The trustee published a notice of a sale of the property, to be made on the 31st day of March, 1906, default having been made in the payment of said first installment. Thereupon Towner presented, in the circuit court of Doddridge county, his bill in equity against Maggie Towner and the trustee, praying an injunction to prevent the sale, setting up fraud in the procurement of the deed of trust and his mental incompetency to execute the same, and prayed cancellation thereof. An injunction, in conformity with the prayer of the bill, was awarded on the 16th day of March, 1906. At May rules, 1906, defendant, Maggie Towner, filed her demurrer and answer to the bill. Depositions having been taken, the case was submitted to the court, on the 17th day of May, 1907, when a decree was pronounced, canceling, annulling, and setting aside the deed of trust and perpetuating the

injunction, from which decree the said Maggie Towner has appealed.

The first assignment of error is predicated on the overruling of the demurrer. Under this heading it is said (1) the bill does not sufficiently charge insanity; (2) it does not sufficiently charge the exercise of undue influence; (3) it is multifarious; (4) the charge of fraud is insufficient; (5) it is unintelligible and uncertain, allegations purporting to charge matters resting in the knowledge of the plaintiff and those stated to be upon information and belief being so intermingled as to be inseparable. The bill charges that prior to the 16th day of January, 1905, on the —— day of ———, 1904, plaintiff's mind became affected, and he was, by legal proceedings, committed to an insane asylum where he remained as a patient and inmate until December, 1905. It further says that, while his mind was thus affected and weakened, "he was wholly unable to transact business, but had no power to exercise mental thought or consideration." These charges or statements are substantially repeated in the bill. We think they amount to a sufficient allegation of insanity. The bill says the plaintiff had been adjudged insane and committed to an asylum. In the absence of any showing to the contrary, it is presumed that his insanity continued. *Eakin* v. *Hawkins,* 52 W. Va. 124, 129. There is no intimation of restoration to sanity. The allegations as to undue influence are somewhat lacking as regards specification of improper conduct on the part of the defendant. For the most part, they are general, saying she obtained advantages over him, by her power and persuasion, while he was mentally weak, in fact, insane, and that he was persuaded and induced by his wife, while in that condition, to execute the deed of trust. In other places, it charges generally that she cheated, defrauded and robbed him of his money and property, while he was absolutely insane and while she knew him to be so and susceptible to her influence as a child would be. Whatever may be said of this as a defect, or whether it is one or not, a sufficient ground for relief, sustaining the action of the court, is found in the charge of insanity. The charge of multifariousness is based on certain clauses, imputing desertion, abandonment and other improper conduct to the defendant. These clauses, however, do not purport to state a cause of action. No prayer for relief is predicated upon them.

Neither a divorce nor any other judicial action, respecting the marital relation of the parties, is sought. We think there is nothing in the other grounds of demurrer assigned. The bill is intelligible and the distinction between matters stated upon the plaintiff's knowledge and those stated upon information and belief is reasonably clear.

There is nothing in the complaint founded on alleged failure to give time for an answer after the overruling of the demurrer. As has been stated, the answer was filed at rules. · The statute permits this, and, as it is found in the record and depositions were taken and filed, it must be treated as in the case and raising the issues, although it is not mentioned in any decree, nor replied to. Nor is the decree reversible for failure to recite the cause was heard on the answer, or for want of a general replication.. As process was issued and executed, the bill and answer filed and depositions taken, and sufficient time elapsed to mature the cause for hearing, it is presumed it was regularly matured for hearing, nothing to the contrary appearing on the record. *Riggs* v. *Lockwood,* 12 W. Va. 133; *Linsey* v. *McGammon*, 9 W. Va. 154. If any aid to this presumption is necessary it is found in the recital, saying the cause was heard "upon all former orders, decrees and proceedings" had therein. This harmonizes with the last clause of section 4, chapter 134, Code, saying "Nor shall a decree be reversed at the instance of a party who has taken depositions, for an informality in the proceedings, when it appears that there was a 'full and fair hearing upon the merits, and that substantial justice has been done." No decree can be reversed for want of a replication to the answer, if the defendant has taken depositions as if one had been filed. Code, ch. 134, section 4; *Chalfants* v. *Martin,* 25 W .Va. 394; *Richardson* v. *Donehoo,* 16 W. Va. 685.

As we have said, the adjudication of insanity raised a presumption against the defendant. Ordinarily there is a presumption of sanity, placing the burden upon the party attacking the conveyance on the ground of insanity; but, if the grantor has been previously adjudged insane, or general mental derangement established by proof, it is presumed the infirmity continued and the burden is cast upon the party endeavoring to uphold the deed. Neither presumption is conclusive. Either can be overthrown. Besides, some insane persons have lucid intervals, and

if a deed be executed or a contract made, in such an interval, it is valid. *Beverage* v. *Ralston,* 98 Va. 625; *McPeck* v. *Graham,* 56 W. Va. 200; Bishop on Con., section 959; *Fishburne* v. *Ferguson,* 84 Va. 87, 107. In order to sustain the burden, so thrown upon him, the party relying upon the deed or other instrument, must clearly prove mental competency at the date of execution; and the proof must go to the state and habit, not to the accidental interview or the degree of self-possession in any particular act. *Fishburne* v. *Ferguson,* cited. A leading case on this subject is *Attorney-General* v. *Parntherer,* 3 Bro. 5, 441, in which Lord Thurlow said: "The evidence in support of a lucid interval, after derangement at any period has been established, should be as strong and demonstrative of such fact, as where the object of such proof is to establish derangement. The evidence, in such a case, applying to stated intervals, ought to go to the state and habit of the person, and not to the accidental interview of any individual, or to the degree of self-possession in any particular act: for from an act with reference to certain circumstances, and which does not, of itself, mark the restriction of that mind which is deemed necessary in general, to the disposition and management of affairs, it were certainly extremely dangerous to draw a conclusion so general, as that the party, who had confessedly labored before under a mental derangement, was capable of doing acts binding on himself and others." To the same effect, see the observations of Lord Eldon in *Exparte Holyland,* 11 Ves. 11; Sir W. Grant in *Hall* v. *Warren,* 9 Ves. 611; and Lord Erskine in *White* v. *Wilson,* 13 Ves. 88. Other authorities are *Spencer* v. *Moore,* 4 Call. 423; *Hoge* v. *Fisher,* 1 Pet. C. C. 163; *Jackson* v. *King,* 4 Cow. (N. Y.) 207; *Crouse* v. *Holman,* 19 Ind. 30, 39; *Wray* v. *Wray,* 33 Ala. 187.

No doubt the testimony of the witnesses is more or less colored or affected by prejudice, feeling and bias. Members of the family are arrayed against each other. The wife and two daughters testify on one side, the husband and one son and two brothers on the other. Much of the evidence is contradictory, but, in respect to some matters, the witnesses are in general agreement. A great deal of it, relating to domestic troubles and moral imperfections and misconduct, on the part of members of the family, need not be noticed, since it has no bearing on the real issue.

This statement is subject to one qualification. Domestic infelicity and trouble seems undoubtedly to have been the cause of the husband's insanity. Whether it originated from his extreme jealousy or from misconduct on the part of the wife is immaterial. In respect to these two matters, there is great conflict in the evidence. Towner says his recollection of the execution of the contract and deed of trust is very dim. It seems to him much as a dream, he says. Nobody but himself, his wife and two daughters were present when the contract was written. According to their testimony, he dictated it to his daughter, Ethel, and, after she had written it, kept it about two days before he signed it. Some two or three persons were present when the deed of trust was signed and acknowledged, and their statements as to what occurred are in substantial accord. He objected to signing it and protested against it. The notary who had come at the instance of the wife, to take his acknowledgment, remained there two hours or longer, waiting for his signature. The wife told him, on this occasion, as she did on the occasion of the execution of the contract, he must sign it or take the consequences. She and her daughters say she told him if he did not sign them, the contract and deed of trust, she would sue him. His son, Bernard, says his father was in great distress on the afternoon and evening of the execution of the deed of trust, being nervous and restless, walking the floor and wringing his hands. His exact language is "He would walk through the house from one room to another, wring his hands and look out at one window and then another, he seemed as he couldn't be still anywhere." A. E. Towner, a brother of John Towner, says a son of the latter came for him that evening and urged him to come to his brother's house, saying the father had sent for him. On entering the yard, he heard loud talking and heard the wife say, while standing in the door holding a shining instrument in her hand, "I intend to kill him." Later, she said "If he enters the house I intend to kill him." Just then the husband came out and said "For God's sake go back, she intends to kill you." The witness says his brother "was all stooped over and arms extended and trembling," and that he was then in the worst condition in which he had ever seen him. The notary who took the acknowledgment says Towner was in a distressed condition at the time and that the wife said, as near as he can recollect, "You can

either sign that or abide the consequences." He says Towner made some statements concerning the deed of trust that led him to believe he knew what it was. Among other things, he said if he signed that paper it would ruin him as he would not be able to meet the payments. Again he says Towner seemed to be in great distress and unable to decide what he should do, and appealed to him to tell him whether he ought to sign it. Sometime in April, following, A. E. Towner met his brother a quarter of a mile from his home in his bare feet, there being snow on the ground, and, to advice to get his shoes, responded that he did not want to live. Said Towner and other witnesses say the plaintiff refused at times to sign his pension vouchers, saying he would not live to need the money. He was urged to do so, but declined without giving any sensible reason for so doing. G. R. Towner says he called to see his brother late in January or early in February, and described his condition as follows: "A very bad condition mentally, seemed to be in a state of intimidation or fear, as if some calamity was about to overtake him or something of that kind, kept watching, looking, expecting something." Joseph Ferrebee was with G. R. Towner and says he acted just like a crazy man, but fails to indicate what he did that induced such belief. The witnesses for the defendant all insist that the plaintiff was sane at the time of the execution of the contract and deed of trust, arguing this from what they saw of his conduct and his hesitation and reluctancy in executing the papers. They say he had mental capacity enough to be deliberate and weigh the consequences of the execution of these instruments, expressing fear of his ability to meet the obligations as they should become due. In reply to this, it may be suggested that this fear was not justified by the condition and circumstances, he having a farm worth from two to three thousand dollars and considerable money.

In our opinion, the evidence offered to prove mental capacity is not sufficient. It lacks clearness, and is confined to specific acts. It goes rather to particular acts than to the mental state and condition of the plaintiff. That his mental powers were seriously impaired is beyond doubt. He had been twice committed to an asylum for the insane. At the time of the execution of these papers, he had not been discharged from the second commitment. His son had brought him home temporarily on a

sort of furlough or permission, given by the hospital authorities. In the following May, his condition was so bad that he had to be taken back and was not discharged until in December, 1905. These are grave, overshadowing circumstances, strongly tending to prove mental instability and weakness during the time he was at home.    They are supplemented by the testimony of witnesses who saw him during that period and say he was still insane, specifying facts upon which they base their opinions.

In her answer, the defendant attempted to set up a claim for the care and maintenance of certain of the children, which is not specifically mentioned in the decree.    As it is a purely legal demand, foreign to the real substance of the bill, the court below ignored it in the decree; but, though improperly, it was put into the cause, and should have been eliminated by the final decree or otherwise.  *Sprinkle* v. *Duty,* 54 W. Va. 559.  The omission of the saving clause which should have been inserted must be corrected here by a modification, but without costs to the appellant, since she induced the error and failed to ask the court below to correct it.  *Frye* v. *Miley,* 54 W. Va. 324; *Sprinkle* v. *Duty,* cited.

For the reasons stated, the decree, modified as aforesaid, will be affirmed with costs to the appellee, the party substantially prevailing.

*Modified and Affirmed.*