# CHARLESTON.

R. R. KITCHEN & COMPANY *et al. v.*

LOCAL UNION No. 141 INT. BRO. ETC. *et al.*

Submitted April 18, 1922.    Decided April 25, 1922.

1. INJUNCTION—*Persons in Community, Whose Business Enterprises Are Illegally Injured by Identical Wrongful Acts, May Join in Bill to Restrain Such Acts.*

    Any number of persons in a community whose respectitve business enterprises are illegally, injuriously and similarly affected by identical wrongful acts repeatedly and constantly done by numerous other persons acting in confederation and conspiracy against such enterprises and their owners, may join in a bill seeking restraint and prevention of such illegal and injurious acts by injunction.    (p. 68).

2. SAME—*Complainants Joining in Suit Need Not be Jointly Engaged in Business or Separately Engaged in Same Kind of Business.*

    It is not essential to such right of joinder, that all of the plaintiffs be jointly engaged in such business or separately engaged in the same kind of business, if such illegal acts so done are indiscriminately directed against the business enterprises of all of them and repeatedly, constantly and injuriously affect them.    (p. 71).

3. SAME—*All Persons Confederating and Conspiring to Injure Plaintiff's Business May be Made Defendants.*

    Likewise, all of the persons so confederating and conspiring may be joined as defendants in such a bill.    (p. 71).

4. SAME—*Equity may Enjoin Interference with Plaintiffs' Business to Prevent Multiplicity of Suits and for Inadequacy of Legal Remedy; where the Injury is Irreparable. Court May Generally Grant Preliminary Injunction.*

    In such case, equity has jurisdiction on the grounds of prevention of a multiplicity of suits and inadequacy of the legal remedy, and, if the injury is irreparable within the legal sense of the term, as it generally is, it affords ground for a preliminary injunction.    (p. 71).

5. SAME—*Bill by Building Contractors Against Local Unions, Officers, and Members Held Sufficient.*

    A bill filed jointly by practically all of the building contractors in a large city, against all of the local unions of organized

    91 W. Va.

labor in such city, their officers and members, disclosing by appropriate allegations, expiration and termination of the previously existing wage scales governing the relations between the plaintiffs and defendants, failure to agree upon new wage scales, a joint effort on the part of the plaintiffs to conduct their respective enterprises on the openshop plan, and concerted and joint resistance of the attempt by the defendants, through refusal to accept employment and otherwise; charging a conspiracy on their part, to prevent prosecution of such enterprises, by unlawful means, through a "Committee of Action" appointed at a meeting composed of representatives and members of all of the defendant organizations, and, in pursuance of such conspiracy, procurement of the breaking of their contracts of service on the part of employees, by persuasion, threats, violence and picketing, of the employment office or agency established by the plaintiffs, the lodgings and homes of the employees and their places of work, at the instigation and by direction of such committee; and praying restraint and prevention of such illegal acts by injunction; is sufficient and demurrers thereto are properly overruled.

6. SAME—*Bill Held Sufficient as Against Local Union and its Members.*

Taken in connection with the allegations above referred to, the appearance of the names of members of one of the local unions joined as a defendant, on the alleged list of the names of such "Committee of Action," emphasizes and strengthens the more general aggelations against it and its members, and, as to it, the bill is sufficient. (p. 71).

Case Certified from Circuit Court, Ohio County.

Bill by R. R. Kitchen & Co. and others against Local Union No. 141, International Brotherhood of Electrical Workers, and others. Interlocutory order entered overruling demurrers to the bill, and case certified.

*Affirmed.*

*W. Gordon Merritt,* and *J. H. Brennan,* for plaintiffs. *Riley & Riley,* for defendants.

POFFENBARGER, PRESIDENT:

A certificate from the Circuit Court of Ohio County, in this cause, calls for review of an interlocutory order entered

in it, by which demurrers to the bill were overruled.    The 59 plaintiffs consisting of 22 corporations,   8 partnership firms and 29 individuals, of the City of Wheeling, constitute a trades union and are, and, long before the matters complained of in their bill occurred, were associated together under the name, Building Construction Employers, and as such association, maintain an  employment  office  in  said city, established by them, on June 16, 1921, after the controversy arose between them and the defendant. Of the plaintiffs, 19 are contractors for wood work done on buildings and in planing mills; 10, for electrical work; 16, for plumbing; 6, for bricklaying; 6, for tin and sheet metal work; and 1, for structural iron work.    The 90  defendants named, consist⸜ of 10 organizations of union labor, their officers, individual members and 31 individuals composing what is known as the ''Committee of Action'' appointed at a meeting of representatives of labor organizations held in the hall of the Ohio Valley Trades and Labor Assembly, May 29, 1921, in pursuance of a call issued by the president and secretary of that organization, which, expressing no definite purpose, urged the officers and members of all labor organizations to attend and advised them that it was for their benefit.

The bill charges confederation and conspiracy on the part of the defendants, on and after the expiration  of the wage contracts between the local labor organizations and their employers, the plaintiffs, March 31, 1921, and disagreement as to wage scales to be observed, to prevent the latter from executing their construction contracts and from obtaining other contracts and prosecuting their several and intimately related businesses, by misrepresentation, persuasion and intimidation through threats, violence, picketing, boycotting and otherwise, exercised upon their employees, persons desiring to take employment from them and other persons from whom they have taken construction contracts and still others from whom they endeavor to obtain such contracts. Its prayer is for an injunction.

The grounds of demurrer assigned are: (1) misjoinder of plaintiffs; (2), misjoinder of defendants; (3), multifarious-

ness; (4), lack of specific charges of illegal conduct against the demurrants, the bricklayers union and some of its members; (5), lack of common or joint interest on the part of the plaintiffs; (6), disassociation or lack of legal relationship of the plaintiffs; (7), indefiniteness and uncertainty of allegation; and (8) want of equity. The instrument contains more than forty pages and sets forth the facts relied upon specifically and in detail.

According to the allegations of the bill, the employment agency is a joint enterprise in which all of the plaintiffs are directly interested. In that they have not merely a common interest but a joint interest, and it is a lawful institution or enterprise. Moreover, it possesses an element of value to them. Through its maintenance and operation, they are in communication with the employment seeking labor of the country, union and non-union. The necessary supply of labor for such a community as the City of Wheeling and its neighboring territory is a matter of very great magnitude. To obtain it within and from without the territory, involves a vast amount of solicitation and encouragement by advertising, correspondence, payment of transportation and otherwise, which can be accomplished more efficiently and economically by joint action than by separate and distinct action on the part of the employers. Unlawful, wrongful, repeated and constant interference with it to such an extent as materially to impair its efficiency constitutes more than one ground for interposition of the preventive remedy in equity. Almost innumerable actions at law would be necessary to vindication of the rights of the owners of the agency, and none of them would be adequate. The injury is irreparable in character, because it would be impossible to estimate the damages with any degree of certainty.

The bill discloses a controversy between all of the contracting employers, on one side, and all of the local organizations of union labor engaged in the principal branches of construction work, on the other, over wages. Among the plaintiffs there is complete unity and solidarity in the demand for wage reductions in the vocations followed by the

defendants.    And there are like and equal unity and
solidarity among the defendants in their resistance of that
demand.    Nothing unlawful is charged or perceived in the
general purpose of either group.    Though the bill does not,
in terms, allege the practical necessity of uniformity in
wages in each branch of the building industry, it is matter of
common knowledge and, moreover, it is necessarily implied
in the allegations.    The expired contracts prescribed such
wages.    Before and after their expiration, the defendants
were invited to meet with the plaintiffs and, through nego-
tiation, come to an agreement or agreements upon reduced
wages uniform in each branch.    In the question of a general
wage scale affecting their business, all employers of the same
class have a common interest and manifest right to contend
jointly for adoption or agreement upon one deemed by them
to be practicable, just, fair and equitable, and the workmen
have a like right.    Ordinarily, one class of contractors might
not have any interest in wage scales pertaining to the busi-
ness of other classes and not directly affecting them.    How-
ever that may be, this bill alleges the extraordinary case of
an association of contractors, to enforce a demand for re-
duction of wages in all vocations, and of the organized work-
men in all of the building branches of labor to resist it.    In
the effort to maintain their position and accomplish their
declared  purpose, the former have jointly proclaimed in-
auguration of the open shop in all of their respective depart-
ments of industry and are endeavoring to maintain it,  by
prosecution of their businesses with labor employed at what
they conceive to be reasonable and fair wages and without
reference to affiliation with any labor organization.    In
resistance of the demand for reduction, there was either a
lock-out or a strike and a consequent cessation of the busi-
ness of the plaintiffs.    Their effort to resume under the
open shop principle is resisted by refusal of the defendants,
to accept employment at the wages offered and under the
conditions imposed.    Although there is a prayer for  an
injunction against the alleged strike, it is based upon the
methods by which it is alleged to be maintained or prose-
cuted.    There is no serious contention against lawfulness

of the strike unmixed with wrongful acts, as a weapon; wherefore there is no occasion to enter upon any inquiry as to its legal status. If it is such, it is not the only measure of resistance alleged to have been adopted by the defendants. The charges are that they picket the employment agency, the places of work, the lodging and boarding places of the employes, and, in some instances by persuasion or inducement, and in others by threats and violence, cause the employees to break their contracts and refuse performance in some cases and cease it in others, to the great injury and damage of the plaintiffs. The bone of contention is wages constituting only an element or factor in the business of each of the plaintiffs. Establishment and maintenance of a wage scale do not constitute the business of any of them, but the existence of such a scale as to the business in which each is engaged is essential and indispensable under the conditions alleged. Hence, resistance of the effort to establish such scales in all of the branches, by the organized laborers therein, is a matter of common interest to all of the plaintiffs, because it affects the business of each of them, directly and immediately. It may not be inherently so, but the attitude taken, as set forth in the bill, makes it so in this instance. As has been observed, the general purpose of neither group is unlawful in itself. But neither may resort to unlawful methods for accomplishment of its lawful purpose; and, in view of the common interest each unit of each group has in the prosecution of his or its business, opposed and affected in common with all others, by an organized and plenary effort conducted on the part of the defendants, if the allegations are true, by unlawful means, all may unite in one bill to restrain and prevent the use of the unlawful means and methods so employed. If, by the use of such methods, directed and applied to the business of each of the plaintiffs, all are prevented from prosecution of their respective enterprises, they are all similarly affected by the same illegal cause, wherefore they may unite in resisting it, and there is no misjoinder of parties plaintiff. *Baldwin Lumber Co.* v. *Local Union No. 560,* (N. J.) 109 Atl. 147; *Key West Cigar Mfgrs.* v. *Rosenbloom,* 171 Fed. 296; *Wickwire Steel Co.* v.

*N. Y. Cent. R. Co.,* 181 Fed. 316; *Pillsbury etc. Mills Co.* v. *Eagle,* 86 Fed. 608; *Liverpool etc. Ins. Co.* v. *Clunie,* 88 Fed. 160; *Lonsdale* v. *Cook,* 44 Atl. (R. I.) 929; *Tift* v. *Southern R. Co.,* 123 Fed. 789; *Wilke* v. *City of Chicago,* 188 Ill. 444; *Strobel* v. *Kerr Salt Co.,* 164 N. Y. 322.

The foregoing observations as to common interest and common participation amply suffice to dispose of the second ground of demurrer, in so far as the allegations of the bill are sufficiently broad and definite to include the defendants. Some of the demurrants deny their sufficiency in this respect, as to them.

They also clearly dispose of the charge of multifariousness, in so far as it is predicated upon the general scope and aspects of the bill. In this connection, there is claim however, that separate, distinct and special causes of action are alleged against Local Union No. 141 International Brotherhood of Electrical Workers and some of the other defendants, all of whom are alleged to have become contractors themselves and entered into competition with some of the plaintiffs, and some of them to have opened shops of their own. In substance and effect, these allegations amount to no more than specifications of methods employed by the defendants named in connection therewith, in resistance of the purposes of the plaintiffs, and denunciation thereof. In so far as they may be deemed to have been intended as a statement of a cause of action for dissolution, under the Sherman Anti-Trust Law, if at all, since they charge combinations in restraint of trade, they are wholly incomplete and insufficient, and are contained in a bill filed in a court having no jurisdiction to entertain one for dissolution of such combinations. No prayer for relief is based upon these allegations. Obviously, they are thrown in largely as mere matter of aggravation and by way of emphasis of the allegations of illegal conduct, and do not make the bill multifarious. *Towner* v. *Towner,* 65 W. Va. 476; *Sprinkle* v. *Duty,* 54 W. Va. 559; *Smith* v. *Patton,* 11 W. Va. 541; *Bean* v. *County Court,* 85 W. Va. 186.

The allegations of inducement to the breaking of contracts of service, by persuasion, express and implied threats

and actual violence, and of joint perpetration or procurement thereof are as full, complete and definite as such charges can be made, ordinarily, in cases of this kind. The wrongful acts are alleged to be of constant occurrence and unrestricted scope. They occur around the employment agency, along the streets, at the places of work and about the lodgings and homes of the employees. They are directed against the business of the plaintiffs through their employees, wherever and whenever they can obtain any workmen. Their generality, pervasiveness, constancy and similarity are significant of concert and direction, such as might characterize the activities of a committee of action representing all of the defendants and the bill alleges that they are the emanations of confederacy and conspiracy on their part. In our opinion, the sufficiency of these allegations is beyond doubt. Such action may be enjoined. *Parker Paint and Wall Paper Co.* v. *Local Union No. 813*, 87 W. Va. 631.

Insufficiency of the allegations of the bill, as to Local Union No. 1, Bricklayers, Masons and Plasterers International Union of America, Arthur Chance and Grover C. Henry, its president and secretary, respectively, and Otto Emmerth, O. McCabe, John Boyd and George Boyd, menbers thereof, is specially urged upon their demurrer. This union is clearly included in the allegations. It is charged along with the others. Its members are either striking or have been locked out, as the case may be. It has representatives on the committee of action which is alleged to be the manager and director of the unlawful conduct charged and complained of. What is urged in behalf of these particular demurrants is substantially the same as that urged against the bill in its entirety. If they are conspirators, as they are alleged to be, they are responsible for the acts done in pursuance of the conspiracy, and it is not necessary to charge them with personal perpetration of such wrongful acts.

A proper order will be entered, recording our opinion that the demurrers were properly overruled by the court below, and certified to that court.

*Affirmed.*