PASSAIC TOWNSHIP BOARD OF EDUCATION, PLAINTIFF–RE-
SPONDENT, v. PASSAIC TOWNSHIP EDUCATION
ASSOCIATION, ET AL., DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1987—Decided December 16, 1987.

Before Judges O'BRIEN, HAVEY and STERN.

*Stephen B. Hunter* argued the cause for appellants (*Klausner & Hunter*, attorneys; *Stephen B. Hunter*, of counsel and on the brief).

*Robert Goldsmith* argued the cause for respondent (*Wiley, Malehorn & Sirota*, attorneys; *Robert Goldsmith*, of counsel and on the brief).

*Kenneth I. Nowak* argued the cause for *amicus curiae* New Jersey Education Association (*Zazzali, Zazzali & Kroll*, attorneys; *James R. Zazzali*, of counsel; *Kenneth I. Nowak*, on the brief).

*Russell Weiss, Jr.*, General Counsel, argued the cause for *amicus curiae* New Jersey School Boards Association (*Cynthia J. Jahn*, on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Defendants appeal from a series of orders of the Chancery Division, restraining an illegal work stoppage or strike by school employees and imposing fines and ordering reimbursement to plaintiff Passaic Township Board of Education (Board) for expenses caused thereby. We now affirm in part and reverse in part.

The Board and defendant Passaic Township Education Association (Association) were engaged in negotiations with regard to salaries and other terms and conditions of employment for unit members for the 1985–86 and 1986–87 school years. On October 10, 1985, in an effort to coerce the bargaining process, the members of the Association decided to engage in a work

stoppage. Commencing on October 10, 1985, teaching and nonteaching personnel failed to report to work.

On the verified complaint of the Board, the Chancery Division entered an order on October 10, 1985, returnable October 16, 1985, which, among other things, included temporary restraints against any strike or work stoppage. Sixty-two individual employees [1] were served with a copy of the order. Although the order directed the individual defendants to report for work on Friday, October 11, 1985, the employees did not report for work that day nor on Tuesday, October 15.[2]

On the Board's application on October 15, 1985, the trial judge found that defendants had deliberately and willfully violated the restraints contained in the order to show cause entered on October 10, 1985, and that immediate, substantial and irreparable harm would result to the Board. He restrained and enjoined defendants from any further strike or work stoppage. The order also provided that each individual employee who failed to report for work at the commencement of the school day on Wednesday, October 16, 1985, be fined $500, and who failed to report for work on any school day after October 16, 1985, be fined two days gross pay for each and every such day of absence. The order directed the Association to distribute a letter urging its members to return to work.

Notwithstanding notice to the employees of the two court orders directing them to return to work, they failed to report to work on October 16 and October 17. On October 17, 1985, the Association and Board entered into a memorandum of agree-

---

[1]There were 56 teaching staff members including nurses, guidance counselors, social workers and teachers and six secretaries, all of whom are members of the Association.

[2]Monday, October 14, 1985 was Columbus Day. The Board successfully obtained substitutes to enable the schools to continue operating during the work stoppage.

ment which ended the job action, and the employees returned to work on Monday, October 21, 1985.

The employees were not paid for the five days of the strike, October 10, 11, 15, 16, 17 because they failed to perform their contractual duties. By order of January 21, 1986, the trial judge denied defendant's application to be relieved from the court's order and directed the Board to submit a certification itemizing in detail all expenditures related to the strike and resulting litigation. The judge further ruled that any employee not obligated to report to work on October 16, but obligated to work on October 17, be assessed a penalty of $500 for failure to report on October 17; that no credit for withheld wages be applied against the fine, and that any defendant who claimed to be absent due to illness pursue relief through grievance procedures.

On July 10, 1986, the trial judge entered his final order embodying the procedural history and finding that tae Board had withheld $39,274.52 for the employees' failure to report for work, together with fines totaling $48,173.49. The judge found that the total allowable expenses to the date of his order were $54,051.29 and provided for the disposition of the balance.[3] Subsequent to entry of the final judgment defendants appealed. Briefs have been filed and oral argument presented by the New Jersey School Boards Association and New Jersey Education Association as *amicus curiae.*

The principal thrust of defendants' appellate argument is that public employees should have a right to strike comparable to employees in the private sector, unless it is clearly demonstrated that such a strike creates a substantial and imminent threat to the health or safety of the public. Defendants recognize that the common law rule in New Jersey is that public employees do not have the right to strike, *see Board of Education,*

---

[3]The order recites this balance to be $34,396.72. However, our computation results in $33,396.72.

*Borough of Union Beach v. New Jersey Educ. Assoc.*, 53 *N.J.*
29, 36 (1968), but argue that the New Jersey Constitution does
not prohibit strikes by public employees. Our Supreme Court
addressed this contention in *Union Beach* and noted that
Article I, par. 19, of the N.J. Constitution (1947), which reads:

> Persons in private employment shall have the right to organize and bargain
> collectively. Persons in public employment shall have the right to organize,
> present to and make known to the State, or any of its political subdivisions or
> agencies, their grievances and proposals through representatives of their own
> choosing ...

is a provision of grant to employees rather than a restraint
upon them. After noting that the Legislature is not constitu-
tionally prohibited from granting public employees the right to
strike, the court said:

> We should not be thought to recommend legislative departure from the com-
> mon-law rule. On the contrary, we remain satisfied that any concerted action
> which obstructs or disables government runs strongly against sound public
> policy. Rather the question is whether this judge-made law is beyond legisla-
> tive disagreement, and we hold only that it is not. More precisely, we hold that
> Article I, ¶ 19 does not itself embody the judge-made view, and does not prevent
> the Legislature from according public employees rights the Legislature could
> have granted if that provision were not in the Constitution. But the subject is
> so vital that we will not attribute to the Legislature an intent to depart from the
> common law unless that intent is unmistakable. [*Id.* at 46.]

The court concluded that *N.J.S.A.* 34:13A–1 *et seq.*, as amended
by *L.*1968, *c.* 303, did not reflect a legislative intent to depart
from the common law rule prohibiting strikes by public employ-
ees. *Id.* at 48. Similarly, we conclude that the recent statutory
authority for compulsory arbitration in labor disputes [4] involv-
ing police and fire departments, which contains the phrase
"where public employees do not enjoy the right to strike,"

---

[4] *N.J.S.A.* 34:13A–14, adopted by *L.*1977, *c.* 85, which provides:

> It is the public policy of this State that in public fire and police depart-
> ments, where public employees do not enjoy the right to strike, it is
> requisite to the high morale of such employees and the efficient operation
> of such departments to afford an alternate, expeditious, effective and
> binding procedure for the resolution of disputes, and to that end the
> provisions of this act, providing for compulsory arbitration, shall be
> liberally construed.

cannot be construed as legislative approval of or authorization for strikes by other public employees, such as teachers and secretaries as urged on this appeal. The Legislature's intent to permit strikes by those public employees is not "unmistakable."

Defendants rely upon decisions from other states such as *County Sanitation District No. 2 v. Los Angeles County Employees Assn.*, 38 *Cal.*3d 564, 214 *Cal.Rptr.* 424, 699 *P.*2d 835 (1985), where the court abolished the common law prohibition against strikes by public employees under certain circumstances. Whatever the merit of these out-of-state cases, it is not the role of the Appellate Division to alter the established law of the State as expressed clearly and unequivocally by our Supreme Court. *See Orlik v. DeAlmeida*, 45 *N.J.Super.* 403, 409 (App.Div.1957). In the context of teachers' right to strike, *see In re Education Association of Passaic, Inc.*, 117 *N.J.Super.* 255, 261 (App.Div.1971). The appropriate tribunal to accomplish such drastic change is the Supreme Court or the Legislature. *Namm v. Charles E. Frost & Co.*, 178 *N.J.Super.* 19, 35 (App.Div.1981).

■ Since New Jersey public employees do not have the right to strike, it was unnecessary for the trial judge to find anything more than a work stoppage or strike by public employees in order to enter restraints to protect the Board and the public from irreparable harm. We therefore affirm the restraints imposed by the trial judge and turn to the sanctions imposed by him for violation of his orders.

■ The original restraints imposed in the order to show cause were simply a direction to the public employees to cease their illegal strike. Their failure to return to work was in clear violation of the October 10 order. The continued refusal to return to work also violated the October 15 order. We find no merit to defendants' efforts to paint this strike as different from the circumstances in *Union Beach* because the Board here successfully obtained substitutes and allegedly the teachers provided lesson plans and offered to make up the time.

These circumstances do not somehow make this strike legal. To the contrary it was in direct violation of the court's orders.

Having violated the court's orders, defendants were subject to prosecution for contempt pursuant to *R.* 1:10–2. Prosecutions for contempt under *R.* 1:10–2 require certain specific proceedings, *i.e.*, notice, the appointment of a prosecutor and except by consent may not be heard by the judge whose order was allegedly contemned. *R.* 1:10–4. This procedure was followed in *In re Hoboken Teachers Association*, 147 *N.J.Super.* 240 (App.Div.1977), where fines were imposed; in *In re Fairlawn Education Association*, 63 *N.J.* 112, *cert.* den. 414 *U.S.* 855, 94 *S.Ct.* 155, 38 *L.Ed.*2d 104 (1973), where the court explained the punitive nature of a contempt proceeding, and in *In re Buehrer*, 50 *N.J.* 501 (1967).

The trial judge specifically advised defendants on October 15, 1985 that a violation of his order would result in penal consequences, *i.e.*, a $500 fine for each employee who failed to return on October 16, and for each day thereafter a fine of two days gross pay. However, the proceedings resulting in the final judgment under review were not conducted pursuant to *R.* 1:10–2 and 4, but rather proceeded as relief to litigant under *R.* 1:10–5. Under that procedure it was appropriate for the court to require defendants to reimburse the Board for all expenses incurred by it on behalf of the public as a result of the illegal strike. A coercive order seeking to end illegal action may provide a fine, which may not exceed $50 under *N.J.S.A.* 2A:10–5. However, the word "fine" as used in this section means only an imposition in the nature of costs to reimburse government for the pecuniary burden imposed by the breach of a court order and the civil proceeding which that breach precipitated. *Department of Health v. Roselle*, 34 *N.J.* 331, 346 (1961); *see also In re Carton*, 48 *N.J.* 9, 23 (1966).

Punishment for contempt prosecuted summarily under *R.* 1:10–2 is not limited by this section to a $50 fine, but may consist of six months imprisonment or $1,000 fine, or both. *See*

*In re Buehrer, supra,* 50 *N.J.* at 519. We do not suggest that imposition of the additional fines here was not warranted on the merits. We conclude only that there was no formal contempt proceeding commenced and prosecuted under *R.* 1:10–2 and 4 to justify imposition of those fines in addition to the *R.* 1:10–5 application, although there could have been. *See Lusardi v. Curtis Point Prop. Owners Assn.,* 138 *N.J.Super.* 44, 50 (App. Div.1975), mod. 86 *N.J.* 217 (1981). *See also In re Parsippany–Troy Hills Education Association,* 140 *N.J.Super.* 354, 360 (App.Div.1975), mod. 140 *N.J.Super.* 420 (App.Div.1976).

It was quite appropriate that the employees not receive pay for the days upon which they were illegally absent from their jobs. It was also appropriate to order defendants to reimburse the Board for all of the expenses incurred as a result of the illegal strike, including the cost of substitute teachers, legal fees, etc.

Although a fine of $50 would be proper under *N.J.S.A.* 2A:10–5, as noted in the *Roselle* case such a "fine" is to reimburse government for the pecuniary burden imposed by the breach of a court order and the civil proceeding which that breach precipitated. Therefore, to the extent that the expenses computed by the Board included that pecuniary burden, it is included in the reimbursement. On the other hand, the expenses allowed in the July 10, 1986 order were computed to the date of that order. It is clear that additional expenses have been incurred since then. It is therefore necessary that the matter be remanded to the Chancery Division to ascertain the total expenses incurred [5] by the Board as a result of this illegal strike. On the remand, leave is granted to the Board to present further proofs with respect to those expenses as requested in

---

[5] We express no opinion as to the propriety of including counsel fees and costs of appeal as part of those expenses as reimbursement under *R.* 1:10–5. We leave this question for determination by the trial judge after briefing and argument by counsel.

its brief in response to the brief of the New Jersey Education Association.

The finding that defendants engaged in an illegal strike and acted in defiance of the trial judge's order, as a result of which the Board became entitled to relief pursuant to *R.* 1:10–5 is affirmed. However, the fines of $500 imposed on each employee who failed to report to work on October 16, 1985, and the fines of two days gross pay for each day of absence after October 16, 1985 are vacated, since defendants were not adjudicated in contempt after a proceeding conducted in accordance with *R.* 1:10–2 and 4. The matter is remanded to the Chancery Division for calculation of the total expenses incurred by the Board as a result of the illegal strike. Leave is granted to the Board to present evidence of such expenses incurred since July 10, 1986. To the extent that the total expenses exceed the amounts withheld by the Board, an appropriate judgment shall be entered. To the extent that the amounts withheld by the Board exceed such expenses, such sum shall be returned to the Association for distribution to its members. We do not retain jurisdiction.