393 S.E.2d 653

**JEFFERSON COUNTY BOARD OF EDUCATION**

v.

**JEFFERSON COUNTY EDUCATION ASSOCIATION and Betty Jo Walter, its President; and XYZ, Being All Other Officers and Members of the Jefferson County Education Association; Thomas Lange, Individually and as Representative of the Class of all Other Unknown Persons Who are Professional Employees of the Jefferson County Board of Education Who are Participating in a Work Stoppage and Have Failed to Report to Their Work Stations at Facilities of Said Jefferson County Board of Education, on Behalf of Themselves and all Other Employees Participating in Said Concerted Work Stoppage.**

No. 19575.

Supreme Court of Appeals of West Virginia.

April 12, 1990.

Rehearing Denied June 7, 1990.

Lawrence M. Schultz, Askin, Pill, Scales & Burke, L.C., Martinsburg, for Jefferson County Educ. Ass'n.

Grant Crandall, Crandall & Pyles and W.J. Arceneaux, III, Lewis, Ciccarello & Friedberg, Charleston, for Thomas Lange, et al.

Brentz H. Thompson, Hamstead & Associates, L.C., Charles Town, for Jefferson County Bd. of Educ.

Larry Harless, Charleston, for West Virginia Fed. of Teachers, AFL–CIO.

William B. McGinley, Charleston, for West Virginia Educ. Ass'n.

Bruce Ray Walker, Charleston, for Henry Marockie, West Virginia Bd. of Educ.

MILLER, Justice:

This case brings before us the legality of a public school teachers' strike. By order dated March 12, 1990, the Circuit Court of Jefferson County issued a preliminary injunction, at the request of the Jefferson County Board of Education (Board), prohibiting members of the Jefferson County Education Association (JCEA), a voluntary association of teachers, from continuing a work stoppage.[1] The circuit court found that on March 8 and 9, 1990, Jefferson County public school teachers, most of whom were members of JCEA, had engaged in a strike to protest the failure of the governor and the legislature to enact a satisfactory wage and benefit package. The court below held that the strike was illegal and would result in irreparable harm to the public school system. The appellants contest these conclusions.

I.

In the absence of legislation, the common law rule recognized in both federal[2] and state courts[3] is that public employees do not have the right to strike. Although we have not had occasion to address the issue, the federal district court for the Southern District of West Virginia reached this conclusion in a case involving employees of the West Virginia State Road Commission who had gone on strike. *Kirker v. Moore*, 308 F.Supp. 615 (S.D.W. Va.1970), *aff'd*, 436 F.2d 423 (4th Cir.), *cert. denied*, 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971).

Some jurisdictions have reinforced the common law rule by enacting statutes expressly forbidding strikes by public employees.[4] In other jurisdictions, however, statutes have been enacted to ameliorate the common law rule. These statutes can be grouped into two broad categories. First are those which continue the prohibi-

---

1. Throughout this opinion, we use the terms "strike" and "work stoppage" interchangeably.

2. *United Fed'n of Postal Clerks v. Blount*, 325 F.Supp. 879 (D.D.C.), *aff'd*, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).

3. *E.g., Dade County Classroom Teachers Ass'n v. Rubin*, 238 So.2d 284 (Fla.1970), *cert. denied*, 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 623 (1971); *School Dist. No. 351, Oneida County v. Oneida Educ. Ass'n*, 98 Idaho 486, 567 P.2d 830 (1977); *Board of Educ. of Community Unit School Dist. No. 2 v. Redding*, 32 Ill.2d 567, 207 N.E.2d 427 (1965); *Board of Trustees of Univ. of Ky. v. Public Employees Council No. 51, etc.*, 571 S.W.2d 616 (Ky.1978); *Passaic Township Bd. of Educ. v. Passaic Township Educ. Ass'n*, 222 N.J. Super. 298, 536 A.2d 1276 (1987); *Goldberg v. City of Cincinnati*, 26 Ohio St.2d 228, 55 Ohio Ops.2d 468, 271 N.E.2d 284 (1971); *School*

*Comm. of Town of Westerly v. Westerly Teachers Ass'n*, 111 R.I. 96, 299 A.2d 441 (1973); *Burke & Thomas, Inc. v. International Org. of Masters, Mates & Pilots, etc.*, 92 Wash.2d 762, 600 P.2d 1282 (1979). *See generally* Annot., 37 A.L.R.3d 1147 (1971).

4. *See* D. Dripps, *New Directions for the Regulation of Public Employee Strikes*, 60 N.Y.U.L.Rev. 590, 591–92 (1985), in which, in note 1, Professor Dripps lists these statutes:

"Fla. Const. art. I, § 7; Fla.Stat. § 447.505 (1983); Ga.Code Ann. §§ 45–19–1 to –5 (1982); Tex.Stat.Ann. art. 5154c, § 3 (Vernon 1971) (public employees generally), art. 5154c–1, § 2 (Vernon Supp.1985) (police and firefighters); Va.Code §§ 40.1–55 to –57.1 (1981)."

*See also* 5 U.S.C.A. § 7311 (West 1980 & Supp. 1989).

tion against strikes, but permit union recognition, collective bargaining, and mediation procedures.[5]

A second category of statutes permits a limited right to strike. The limitation usually involves granting the right to strike only to certain public employees or permitting the State to enjoin the strike where there is a significant risk to public safety, health, or welfare. This limited right to strike is usually available only after the employment contract has expired and collective bargaining and mediation have failed.[6]

In West Virginia, we have no statutory provision governing the right of public employees to strike. The appellants, however, assert that such a right exists even in the absence of statute. They rely primarily on *County Sanitation Dist. No. 2 v. Los Angeles County Employees Ass'n, Local No. 660*, 38 Cal.3d 564, 214 Cal.Rptr. 424, 699 P.2d 835, *cert. denied*, 474 U.S. 995, 106 S.Ct. 408, 88 L.Ed.2d 359 (1985).[7]

In *County Sanitation Dist. No. 2*, the California Supreme Court was called upon to alter the common law prohibition against public employee strikes. The court, in a plurality opinion,[8] outlined several of the

5. These statutes are set out in note 1 of D. Dripps, *supra* at 591:
 "5 U.S.C.A. §§ 7102–7123 (West 1980 & Supp. 1985); Cal.Gov't Code §§ 3500–3535 (West 1980 & Supp.1985); Conn.Gen.Stat.Ann. §§ 7–467 to –475 (West 1972 & Supp.1985); Del. Code Ann. tit. 14, §§ 4001–4013 (1981 & Supp. 1984), tit. 19, §§ 1301–1312 (1979); Idaho Code §§ 44–1801 to –1811 (1977 & Supp.1985) (firefighters), § 33–1271 (1981) (teachers); Iowa Code Ann. §§ 20.1 to –.27 (West 1978 & Supp.1985); Kan.Stat.Ann. §§ 72–5413 to –5432 (1980), §§ 75–4321 to –4337 (1984); Me.Rev.Stat.Ann. tit. 26, §§ 961–972, 979 to 979N (1964 & Supp.1984–1985); Md.Educ. Code Ann. §§ 6–401 to –411 (1985 & Supp. 1985) (teachers); Mass.Gen.Laws Ann. ch. 150E, §§ 1–15 (West 1982 & Supp.1985); Mich.Comp.Laws Ann. §§ 423.202 to –209 (West 1978); Nev.Rev.Stat. §§ 288.010 to –.280 (1983); N.H.Rev.Stat.Ann. §§ 273–A:1 to –:16 (1977 & Supp.1983); N.J.Stat.Ann. §§ 34:13A–1 to –13 (West 1965 & Supp.1985); N.Y.Civ.Serv.Law §§ 200–214 (McKinney 1983 & Supp.1984–1985); Ohio Rev.Code Ann. §§ 4117.01 to –.23 (Page 1980 & Supp.1984); Okla.Stat.Ann. tit. 11, §§ 51–101 to –113 (West 1978 & Supp.1984–1985) (police and firefighters), tit. 70, §§ 509.1 to –.10 (West 1972 & Supp.1984–1985) (teachers); S.D.Codified Laws Ann. §§ 3–18–1 to –17 (1980 & Supp. 1984); Tenn.Code Ann. §§ 49–5–601 to –613 (1983) (teachers); Wash.Rev.Code Ann. §§ 41.56.010 to –.950 (1972 & Supp.1986) (public employees)."

6. These statutes are listed in note 1 of D. Dripps, *supra*, at 591:
 "Alaska Stat. §§ 23.40.070 to –.260 (1984); Hawaii Rev.Stat. §§ 89–1 to –20 (1976 & Supp. 1984); Illinois Public Labor Relations Act §§ 1–27, Ill.Ann.Stat. ch. 48, §§ 1601–1627 (Smith–Hurd Supp.1985) (public employees generally), Illinois Educational Labor Relations Act §§ 1–21, Ill.Ann.Stat. ch. 48, §§ 1701–1721 (Smith–Hurd Supp.1985) (teachers); Minn.Stat.Ann. §§ 179A.01 to –.25 (West Supp.1985); Mont.Code Ann. §§ 39–31–101 to –409 (1983); Or.Rev.Stat. §§ 243.650 to

–.782 (1981); Pa.Stat.Ann. tit. 43, §§ 1101.101 to –.2301 (Purdon Supp.1985); Vt.Stat.Ann. tit. 21, §§ 1721–1735 (1978 & Supp.1985) (municipal employees); Wis.Stat.Ann. §§ 111.70–111.97 (West 1974 & Supp.1985)."

7. The appellants rely on two other cases. In *Davis v. Henry*, 555 So.2d 457 (La.1990), the Louisiana Supreme Court held that a teachers' strike was legal and not enjoinable because the local school board was subject to the strictures of the state's "Little Norris–La Guardia Act," prohibiting the issuance of injunctions in labor disputes except in limited circumstances. For the federal counterpart of the Louisiana statute, see 29 U.S.C.A. §§ 101–115 (West 1973 & Supp. 1989). It appears that a majority of states have a similar statute. *See* H. Perritt, *Labor Injunctions* § 2.18 at 84–85 (1986). West Virginia does not. Consequently, *Davis* is not applicable here.
 *Local 2238, Am. Fed'n of State, County & Mun. Employees, AFL–CIO, v. Stratton*, 108 N.M. 163, 769 P.2d 76 (1989), is also inapplicable in that it dealt with the implied statutory right of public employees to bargain collectively and not a right to strike in the absence of a statute.

8. The central issue in the case was whether a sanitation district could sue a public employees' union for damages arising from a strike of local sanitation workers following expiration of a collective bargaining agreement. Two of the seven justices concurred solely on the basis that the strike was peaceful, concluding as we had in *City of Fairmont v. Retail, Wholesale, & Dep't Store Union, AFL–CIO*, 166 W.Va. 1, 283 S.E.2d 589 (1980), that there was no right to damages in such circumstances. A third justice dissented. Another justice, who had signed the plurality opinion, filed a separate concurring opinion to emphasize that there was no constitutional right to strike. Chief Justice Bird filed a concurring opinion outlining her view of the constitutional right to strike on the part of public employees. For a discussion of the status of California law after *County Sanitation Dist. No. 2*, see Comment, *The Uncertain Legal Status of*

policy considerations commonly cited in support of the common law rule:

"[T]he terms of public employment are not subject to bilateral collective bargaining, as in the private sector, because they are set by the legislative body through unilateral lawmaking.... [S]ince legislative bodies are responsible for public employment decisionmaking, granting public employees the right to strike would afford them excessive bargaining leverage, resulting in a distortion of the political process and an improper delegation of legislative authority. Finally, public employees provide essential public services which, if interrupted by strikes, would threaten the public welfare." 38 Cal.3d at 574, 214 Cal.Rptr. at 430–31, 699 P.2d at 841.

The court concluded, however, that two of these policy considerations no longer justified denying public employees the right to strike. The court pointed out that the California legislature had given public employees extensive bilateral collective bargaining rights. Consequently, there was no longer any reason to deny such employees the right to strike on the ground that their terms and conditions of employment were unilaterally established. 38 Cal.3d at 576–77, 214 Cal.Rptr. at 432, 699 P.2d at 842–43. The California court also disputed the assumption that the right to strike would give public employees undue leverage against the government, thereby distorting the political process. It pointed out that not all governmental services were essential and that there were alternatives to capitulation to unreasonable demands such as contracting out services or firing the strikers. Moreover, the court took the view that strikers might return to work voluntarily because of wage losses or public sentiment against the strike. 38 Cal.3d

at 577–79, 214 Cal.Rptr. at 432–35, 699 P.2d at 843–45.

The California court conceded, however, that as to essential public services, there was still a need for limitations on the right to strike.[9] Consequently, the court abrogated the common law rule prohibiting public employee strikes and granted a qualified right to strike which "allows exceptions in certain essential areas of public employment (e.g., the prohibition against firefighters and law enforcement personnel) and also requires the courts to determine on a case-by-case basis whether the public interest overrides the basic right to strike." 38 Cal.3d at 586, 214 Cal.Rptr. at 439, 699 P.2d at 850.

We do not find this reasoning persuasive in our case. First, as we have already noted, a statutory scheme which accorded collective bargaining rights to a variety of public employees, including teachers, was already in place in California when the issue came before the court in *County Sanitation Dist. No. 2*. This legislation, parts of which had been enacted as early as 1961, recognized unions, authorized collective bargaining, and provided for resolution of bargaining impasses by mediation procedures. *See* Cal.Gov't Code §§ 3500–3549 (West 1980 & Supp.1990). The California court merely engrafted onto the legislatively mandated collective bargaining process the right to strike once the statutory process was exhausted.

In this state, however, we have no collective bargaining statute. Teacher pay is unilaterally set by the legislature, W.Va. Code, 18A–4–2 (1989), with the county boards of education given the right under W.Va.Code, 18A–4–5a (1989), to supplement the basic salary. Unlike California, we have no legislative safety net which

*Teacher Strikes in California,* 23 U.S.F.L.Rev. 193 (1989).

**9.** The court's language in *County Sanitation Dist. No. 2,* 38 Cal.3d at 580–81, 214 Cal.Rptr. at 435, 699 P.2d at 846, was:

"We of course recognize that there are certain 'essential' public services, the disruption of which would seriously threaten the public health or safety. In fact, defendant union itself concedes that the law should still act to

render illegal any strikes in truly essential services which would constitute a genuine threat to the public welfare. Therefore, to the extent that the 'excessive bargaining power' and 'interruption of essential services' arguments still have merit, specific health and safety limitations on the right to strike should suffice to answer the concerns underlying those arguments."

enables the parties to proceed through a process of collective bargaining, mediation, or arbitration of disputes before having to face the strike issue. Judicial creation of a right to strike without any underlying process for dispute resolution would create chaos.

Nor are we convinced that the retaliatory economic alternatives outlined in *County Sanitation Dist. No. 2* sufficiently balance the bargaining positions of the government and its employees so as to warrant removal of the common law prohibition against strikes, particularly with respect to employees in essential services. As a practical matter, discharging striking public employees would waste their years of expertise and training and create obvious problems finding capable and trained replacements. While pay losses and adverse public sentiment might eventually cause strikers to return to work, such considerations often do not address the capacity of the government to carry on during an indefinite work stoppage.

Finally, we note that one of the significant factors in the California case was that the employees' collective bargaining agreement had expired, and, as a consequence, they were without any type of employment contracts. Even states that have extended to public employees a limited right to strike do not recognize the right if there is an existing employment contract between the public agency and its employee. In Illinois, for example, educational employees may

strike only if: (1) they are represented by an exclusive bargaining agent; (2) mandatory mediation procedures have been unsuccessful; (3) a five-day notice provision has been satisfied; (4) *the collective bargaining agreement has expired;* and (5) the unresolved issues have not been submitted for arbitration. Ill.Ann.Stat. ch. 48, ¶ 1713 (Smith–Hurd 1986). *See* Minn.Stat. Ann. § 179A.18 (1987); Mont.Code Ann. § 39–31–307 (1975).

Here, the teachers have existing employment contracts.[10] Under the Illinois statute, this strike would have been unlawful because their employment contracts had not expired. We are directed to no jurisdiction that has sanctioned a public employees' work stoppage protesting wages where there is an existing and ongoing contract between the employees and the public entity.

We continue to emphasize, as other states have done,[11] that these complex issues are best resolved in the legislative arena. As we stated almost ten years ago in *City of Fairmont v. Retail, Wholesale, & Dep't Store Union, AFL–CIO,* 166 W.Va. 1, 12, 283 S.E.2d 589, 595 (1980):

"[I]t was the initial inability of the courts to judicially resolve the competing interests of private employees and private employers that led to federal legislation in the labor law field. Most if not all commentators in the labor law area agree that the complex issues in [public employees] field are ill suited to any com-

---

**10.** Under W.Va.Code, 18A–2–2 (1989), a teacher holding a bachelor's degree who has been employed three years obtains a continuing contract, which can be terminated only on limited grounds expressly listed in the statute, i.e., mutual consent, misconduct as defined in W.Va. Code, 18A–2–8 (1985), or lack of need for the teacher's services. Thus, after three years of employment, a teacher has vested tenure. *See* Note, *Teachers' Union and Employment Rights: A Survey of West Virginia Law,* 85 W.Va.L.Rev. 239 (1983).

**11.** Other courts have recognized that the right of public employees to bargain collectively, to have mediation and arbitration, and to strike rest within the legislative realm. *E.g., Timberlane Regional School Dist. v. Timberlane Regional Educ. Ass'n,* 114 N.H. 245, 317 A.2d 555 (1974); *School Comm. of Town of Westerly v. Westerly*

*Teachers Ass'n,* 111 R.I. 96, 299 A.2d 441 (1978); *Burke & Thomas, Inc. v. International Org. of Masters, Mates & Pilots, etc.,* 92 Wash.2d 762, 600 P.2d 1282 (1979). Experts in the labor relations field opine that such legislation might ameliorate some of the conflicts in this area. M. Bernstein, *Alternatives to the Strike in Public Labor Relations,* 85 Harv.L.Rev. 459 (1971); J. Burton & C. Krider, *The Role and Consequence of Strikes by Public Employees,* 79 Yale L.J. 418 (1970); D. Dripps, *New Directions for the Regulation of Public Employee Strikes,* 60 N.Y.U.L. Rev. 590 (1985); K. Hanslowe & J. Acierno, *The Law and Theory of Strikes by Government Employees,* 67 Cornell L.Rev. 1055 (1982); T. Kheel, *Strikes and Public Employment,* 67 Mich.L.Rev. 931 (1969); C. Kincaid, *Resolving Public Employment Disputes: A Guide for West Virginia,* 79 W.Va.L.Rev. 23 (1976).

prehensive judicial solution." (Footnote omitted).

Although in the past we have not hesitated to alter common law. rules where we believed that the changing conditions of society required such a result,[12] in each case, those changes involved rules that were relatively simple in their impact and fell within an accustomed band of court-created common law, such as the tort law.[13] Here, we deal with a rule that historically has been the exclusive subject of legislation not only because of the complexity of the problem, but also because of its direct impact on the public treasury.

 Nor does our case law afford any support for the appellants' position. In *City of Fairmont, supra,* we held that a public employer has no common law right to seek damages against a union whose members peacefully picketed the employer's premises after the expiration of the collective bargaining agreement.[14] In reliance on *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979), we concluded in Syllabus Point 2 of *City of Fairmont, supra:*

> "While some constitutional protection is extended under the First Amendment to public employees to organize, speak freely and petition, it is clear that a pub-

lic employer is not required to recognize or bargain with a public employee association or union in the absence of a statutory requirement."

In *Woodruff v. Board of Trustees of Cabell Huntington Hosp.,* 173 W.Va. 604, 319 S.E.2d 372 (1984), we recognized a public employee's constitutional right to distribute leaflets peacefully near the employer's premises in protest of the employer's decision to eliminate jobs.[15] There was nothing in the opinion, however, to suggest that the employees were refusing to work at their regular assignments or attempting to institute a work slowdown. *Woodruff* cannot, therefore, be cited as supporting judicial abrogation of the prohibition against strikes by public employees.

In short, we decline to alter the common law judicially. Public employees have no right to strike in the absence of express legislation or, at the very least, appropriate statutory provisions for collective bargaining, mediation, and arbitration. In view of our legislature's silence on these complex issues, we decline to intervene.

## II.

We will briefly address several procedural errors asserted by the appellants.

---

**12.** *See Morningstar v. Black & Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979).

**13.** *E.g., King v. Kayak Mfg. Co.,* 182 W.Va. 276, 387 S.E.2d 511 (1989) (abolishing common law defense of assumption of risk in favor of comparative assumption of risk); *Gamble v. Main,* 171 W.Va. 469, 300 S.E.2d 110 (1983) (establishing implied warranty of fitness in new home); *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979) (abolishing common law contributory negligence in favor of comparative contributory negligence); *Morningstar v. Black & Decker Mfg. Co., supra* (establishing strict liability in tort for manufactured products); *Harless v. First Nat'l Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978) (limiting private employer's right to discharge an at-will employee); *Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976) (establishing right of unemancipated minor to maintain action against parents for personal injuries); *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975) (abolishing doctrine of municipal tort immunity); *State v. Grimm,* 156 W.Va. 615, 195 S.E.2d 637 (1973), *overruled on other grounds, State v. Nuc-*

*kolls,* 166 W.Va. 259, 273 S.E.2d 87 (1980) (disapproving the M'Naghten rule on insanity and adopting a rule similar to the Model Penal Code); *Adkins v. St. Francis Hosp.,* 149 W.Va. 705, 143 S.E.2d 154 (1965) (abolishing doctrine of charitable immunity in tort cases against hospitals).

**14.** Syllabus Point 3 of *City of Fairmont* states:

> "Where public employees, who have no employment contracts with their employer, engage in a work stoppage which is peaceful and directed only against the employer with no attempt to interfere with his customers or bar ingress to other employees, there is no common law right to damages on the part of the public employer."

**15.** Syllabus Point 2 of *Woodruff* states: "Under article III, §§ 1, 7, and 16 of the West Virginia Constitution, collective bargaining agreements in the public sector may not contain provisions abrogating employees' fundamental constitutional rights, including rights of expression, assembly, association, and petition."

**22**

## A.

### *Class Action*

The appellants question the propriety of a class action against JCEA. Suit was filed against JCEA, Betty Jo Walter, its president, and Thomas Lange, a JCEA member, individually and as representative of the class of "all other ... professional employees of [the Board] who are participating in a concerted work stoppage...."

■ We spoke at length about Rule 23 of the West Virginia Rules of Civil Procedure[16] in *Mitchem v. Melton*, 167 W.Va. 21, 277 S.E.2d 895 (1981). We pointed out in *Mitchem* that we had not adopted the 1966 revisions to the Federal Rules of Civil Procedure, which, among other things, required the trial court to certify formally the appropriateness of a class action.[17] Fed.R.Civ.P. 23(c). In Syllabus Point 5 of *Mitchem*, we stated:

"Whether the requisites for a class action exist rests within the sound discretion of the trial court."

*See Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964).

■ The general requisites of a class action are stated in Rule 23(a). As we noted in *Mitchem, supra,* the appropriateness of a class action depends on a determination that the persons constituting the class are "so numerous as to make it impracticable to bring them all before the court," which we termed the "numerosity" requirement,[18] that the named individuals joined "will fairly insure the adequate representation" of the class, and that the rights asserted against or on behalf of those making up the class are of the character specified in the rule. 167 W.Va. at 32–34, 277 S.E.2d at 901–02.

■ Rule 23, which speaks of the right of the class to "sue or be sued," is available to join a class of plaintiffs as well as a class of defendants. The party who seeks to establish the propriety of a class action has the burden of proving that the prerequisites of Rule 23 have been satisfied. *E.g., United Indep. Flight Officers, Inc. v. United Airlines, Inc.*, 756 F.2d 1274 (7th Cir.1985); *Reed v. Bowen*, 849 F.2d 1307 (10th Cir.1988); *Rowan v. First Bank of Boaz*, 476 So.2d 44 (Ala.1985); *Darnall v. City of Englewood*, 740 P.2d 536 (Colo. App.1987); *Dunn v. Jenkins*, 268 Ind. 478, 377 N.E.2d 868 (1978); *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741 (Iowa 1985); *Kelly v. County of Allegheny*, 519 Pa. 213,

16. The relevant portion of W.Va.R.Civ.P. 23, states:

**"Class Actions.** (a) *Representation.*—If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is (1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it; (2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought; or (4) the prosecution of separate actions by or against individual members of the class would create a risk of:

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

17. Syllabus Point 4 of *Mitchem* states:

"There is no requirement for formal court certification of the appropriateness of a class action under Rule 23 of the West Virginia Rules of Civil Procedure nor is there any requirement in our Rule 23 as there is in Rule 23(c)(4) of the Federal Rules of Civil Procedure for the use of subclasses."

18. In *Mitchem*, 167 W.Va. 33–34, 277 S.E.2d at 902, we stated:

"[T]he test for 'impracticability' of joining all members does not mean 'impossibility' but only difficulty or inconvenience of joining all members. See, footnote 7, *Occidental Land, Inc. v. Superior Court*, 18 Cal.3d 355, 556 P.2d 750, 134 Cal.Rptr. 388 (1976); 7 Wright & Miller, *Federal Practice and Procedure: Civil* § 1762 (1969); 35A C.J.S. *Federal Civil Procedure* §§ 70 and 71 (1960)."

546 A.2d 608 (1988); *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764 (Tex. Ct.App.1986). *See generally* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.02–2 at 23–84 (2d ed. 1987).

Historically, we have held that in the absence of an authorizing statute or rule, an unincorporated labor association cannot be sued as an entity. *City of Fairmont v. Retail, Wholesale, & Dep't Store Union, AFL–CIO, supra; State ex rel. Glass Bottle Blowers Ass'n v. Silver,* 151 W.Va. 749, 155 S.E.2d 564 (1967). *See West Virginia Secondary Schools Activities Comm'n v. Wagner,* 143 W.Va. 508, 102 S.E.2d 901 (1958); *West v. Baltimore & O. R. Co.,* 103 W.Va. 417, 137 S.E. 654 (1927). It has long been the rule, however, that suit may be brought on behalf of or against an unincorporated labor association by joining some of its members in a representative class action. *E.g., Turnstall v. Brotherhood of Locomotive Firemen & Enginemen,* 148 F.2d 403 (4th Cir.1945); *Lowry v. International Bhd. of Boilermakers, Iron Shipbuilders & Helpers of Am.,* 259 F.2d 568 (5th Cir.1958); *Benz v. Compania Naviera Hidalgo, S.A.,* 233 F.2d 62 (9th Cir.1956), *aff'd,* 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957). *See* 7C C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1861 at 215 (1986). As we stated in Syllabus Point 2 of *State ex rel. Glass Bottle Blowers Ass'n v. Silver, supra:*

> "In the absence of a statute or rule of practice authorizing such procedure, an unincorporated society or association can not be sued as an entity by its name, nor can judgment be rendered against it merely by name; but to confer jurisdiction, the members composing the association, or some of them, must be named as parties and process served upon them individually."

**19.** We think that the safe practice is to name more than one member of an unincorporated association in order to "ensure adequate representation of all members." *Mitchem v. Melton,* 167 W.Va. at 34, 277 S.E.2d at 902.

**20.** The relevant text of W.Va.Code, 53–5–8, provides:

> "No injunction shall be awarded in vacation nor in court, in a case not ready for hearing,

*See City of Fairmont v. Retail, Wholesale, & Dep't Store Union, AFL–CIO, supra.* Accordingly, the Board could bring a class action against JCEA by naming and serving one or more of its members [19] in a representative capacity and by satisfying the other requirements of Rule 23(a), as set out above.

■ Here, the record indicates that school was cancelled in Jefferson County on March 8 and 9, 1990, when well over 300 of the approximately 400 teachers employed by the Board participated in a concerted work stoppage. The strike was called at a JCEA meeting on March 7, 1990, at which 268 of the 399 JCEA members voted not to go to work the next day. It appears that both Ms. Walter and Mr. Lange are teachers, employees of the Board, and members of JCEA. The Board sought injunctive relief against all of the teachers engaged in the work stoppage on the same ground, and all members of the class occupied the same position vis-a-vis the Board.

On this basis, the trial court concluded that the class action was appropriate under Rule 23(a). In view of the evidence of record, we cannot say that the lower court abused its discretion in reaching this result. Accordingly, we find no error in the court's decision to allow the Board to maintain a class action.

### B.

### *Lack of Evidentiary Hearing*

The appellants also complain that no evidentiary hearing was held prior to the issuance of the preliminary injunction. Under W.Va.Code, 53–5–8 (1955), a preliminary injunction may issue if "the court or judge be satisfied by affidavit or otherwise of the plaintiff's equity." [20] *See* Syllabus

> unless the court or judge be satisfied by affidavit or otherwise of the plaintiff's equity; and any court or judge may require that reasonable notice shall be given to the adverse party, or his attorney-at-law, or in fact, of the time and place of moving for it, before the injunction is awarded, if in the opinion of the court or judge it be proper that such notice should be given."

Point 10, *Chesapeake & Potomac Tel. Co. v. City of Morgantown,* 143 W.Va. 800, 105 S.E.2d 260 (1958).

■ This does not mean that a cursory affidavit is sufficient to support the issuance of an injunction. As we explained in *State ex rel. Bronaugh v. City of Parkersburg,* 148 W.Va. 568, 574, 136 S.E.2d 783, 787 (1964): "Any injunctive relief in these circumstances would be mandatory in nature, a harsh remedial process, used only in cases of great necessity and not looked upon with favor by the courts." (Citation omitted). *See also State ex rel. Donley v. Baker,* 112 W.Va. 263, 164 S.E. 154 (1932). We have uniformly held that in order to obtain a preliminary injunction, a party must demonstrate the presence of irreparable harm. Syllabus Point 4, in part, *R.R. Kitchen & Co. v. Local Union No. 141, Int'l Bhd. of Elec. Workers,* 91 W.Va. 65, 112 S.E. 198 (1922) ("[I]f the injury is irreparable within the legal sense of the term, ... it affords ground for a preliminary injunction."). *See also Hechler v. Casey,* 175 W.Va. 434, 440, 333 S.E.2d 799, 805 (1985) ("Injunctive relief, like other equitable or extraordinary relief, is inappropriate when there is an adequate remedy at law.").

■ We recognized the necessity of a balancing of hardship test in Syllabus Point 2 of *Severt v. Beckley Coals, Inc.,* 153 W.Va. 600, 170 S.E.2d 577 (1969):

" 'The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.' Point 4, syllabus, *State ex rel. Donley v. Baker,* 112 W.Va. 263 [164 S.E. 154 (1932)]."

A similar test has evolved in the federal courts, as seen from the following passage from *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1054 (4th Cir.1985):

"Under the balance of hardship test the district court must consider, in 'flexible interplay,' the following four factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." (Citation omitted).

*Citing Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 193–96 (4th Cir. 1977). *See also University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Rafeedie v. Immigration & Naturalization Serv.,* 279 U.S.App.D.C. 183, 880 F.2d 506 (D.C.Cir. 1989); *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency,* 649 F.2d 71 (1st Cir.1981); *Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148 (3d Cir.1984); *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,* 875 F.2d 1174 (5th Cir.1989), *cert. denied,* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990); *N.A.A.C.P. v. City of Mansfield,* 866 F.2d 162 (6th Cir.1989); *Ekanem v. Health & Hosp. Corp.,* 589 F.2d 316 (7th Cir.1978), *cert. denied,* 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 40 (1984); *Jensen v. Dole,* 677 F.2d 678 (8th Cir.1982); *King v. Saddleback Junior College Dist.,* 425 F.2d 426 (9th Cir.1970), *cert. denied,* 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1971); *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enterprise Management Consultants, Inc.,* 883 F.2d 886 (10th Cir.1989). *See generally* 11 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2948 at 430–31 (1973).

Several jurisdictions have, in the absence of express legislation, applied these principles to public teacher work stoppages and have cautioned against the precipitous issuance of a preliminary injunction without clear facts showing irreparable harm. *E.g., School Dist. for City of Holland, Ottawa & Allegan Counties v. Holland Educ. Ass'n,* 380 Mich. 314, 157 N.W.2d 206 (1968); *Timberlane Regional School Dist. v. Timberlane Regional Educ. Ass'n,*

114 N.H. 245, 317 A.2d 555 (1974); *School Comm. of Town of Westerly v. Westerly Teachers Ass'n,* 111 R.I. 96, 299 A.2d 441 (1973).

 In the present case, the trial court did not act precipitously. The initial hearing on the preliminary injunction was conducted on March 8, 1990. The court was advised as to the respective positions of the parties and requested briefs thereon. On March 12, 1990, the court issued a preliminary injunction which required those teachers participating in the work stoppage to return to their classrooms on March 15, 1990.[21]

For the foregoing reasons, we affirm the judgment of the Circuit Court of Jefferson County.

Affirmed.

McHUGH, J., deemed himself disqualified and did not participate in the consideration or decision of this case.

---

**21.** Two other procedural claims are raised. The appellants contend that the court's order of March 12, 1990, did not contain sufficient findings pursuant to W.Va.R.Civ.P. 52. We have carefully reviewed the judge's order and find it adequate in this regard.

The appellants also assert that the March 12, 1990 order set a hearing date of April 12, 1990, for any further proceedings, including motions to dissolve the injunction. They note that W.Va. Code, 53-5-8, sets much shorter time limits for hearings on interlocutory motions. This provision does not come into play, however, until a formal motion for a hearing is made with notice to the other parties of record. There is no evidence that such a motion was made in this case.